UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 1:20-CV-03313 |
| v. | ) Judge Edmond E. Chang |
| PATRICIA RIVERS, KI'ESHA M. GARY, and ALPHA II OMEGA TAX, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Patricia Rivers runs a business as a federal income tax preparer. Through the company, Alpha II Omega Tax,[1] Rivers and her daughter-in-law Ki'esha Gary[2] have prepared thousands of federal income tax returns for customers. Between 2012 and 2013, the IRS examined a selection of federal income tax returns prepared by Rivers and determined that the returns showed a deductions scheme and a sole-proprietorship scheme, causing actual tax losses to the United States. R. 1, Compl. 18–21. Rivers was fined $17,340 by the IRS in March of 2018 for violation of due-diligence requirements. The IRS also investigated federal income tax returns prepared by Rivers

---

[1]The government moves for summary judgment and to enjoin both Rivers and Alpha II Omega Tax from preparing tax returns. This Court entered default against Alpha II Omega Tax in June 2021, R. 60, and warned that if Alpha II Omega Tax did not retain counsel, the government could move for default judgment, R. 48. For simplicity' sake, the Court uses Rivers throughout this Opinion to refer to both Rivers individually and her company Alpha II Omega Tax, unless the context dictates otherwise.

[2]Gary failed to answer or otherwise file a pleading responsive to the Complaint, so this Court entered default judgment, R. 23, and an order of permanent injunction, R. 24, against her on September 28, 2020.

for the calendar years 2016 to 2019, and the investigation included customer interviews *Id.* ¶ 22. The investigations revealed yet another pattern of fraudulent tax returns, specifically by underreporting customer tax liability and by inflating unwarranted refunds. The government has moved for summary judgment and asks for a permanent injunction against Rivers and Alpha II Omega Tax. R. 73, Pl.'s Mot. Summ. J.

## I. Background

The facts narrated below are undisputed. Typically in deciding a party's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But here the facts are admitted because of Rivers' default and her failure to comply with Local Rule 56.1.

### A. Entry of Default and Local Rule 56.1

As evidenced by numerous docket entries, default was entered against Rivers based on the magistrate judge's recommendation to do so, R. 64, because of her repeated failure to defend against the action and her failure to comply with discovery deadlines, R. 69. Rivers filed an untimely response to the entry of default, R. 70, Mot. Reconsider Default, but nothing in the response warranted a vacatur of the default, so the motion was denied. R. 71. Given the default by Rivers, "the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

Even more important for the purposes of the government's summary judgment motion, Rivers did not submit a response to the government's Local Rule 56.1 Statement of Facts, nor did she submit her own. Local Rule 56.1 governs motions for summary judgment in this District. The rule requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(a)(3). The non-moving party then must respond to "each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). This means the non-moving party must "admit or deny each factual statement proffered by the [moving party] and ... designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Bd. of Educ. of the City of Chi., Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). If the non-moving party wishes to present additional facts, then it must do so in its own "statement, consisting of short-numbered paragraphs" supported by citations to the record. L.R. 56.1(b)(3)(C). Complying with Local Rule 56.1 is not a mere technicality, and if a party fails to comply, courts are not obliged to "scour the record looking for factual disputes." *Greer*, 267 F.3d at 727.

Rivers failed to comply with the rule entirely. Rivers neither admitted nor denied *any* of the numbered paragraphs in the government's statement as required by Local Rule 56.1(b)(3)(A). What's more, she did not file her own statement of facts or a memorandum of law. Instead she submitted a two-page document that, although titled as a response to the government's summary judgment motion, does not contain

3

any argument or include any facts. R. 81, Defs.' Br. The document does summarily say, among other things, that the government "hasn't proven that the defendant nor her tax company did anything wrong," that it would be a miscarriage of justice to enforce the terms of the proposed injunction, and that Rivers' attorney is to blame for her default and failure to comply with discovery. *Id.* at 1–2.

On the issue of counsel, the lawyers for Rivers withdrew in April 2021, R. 41, 48, and the Court has already decided the issue of default. R. 71, Denial. It is true that after counsel withdrew, Rivers has been litigating the case *pro se*, but *pro se* litigants are expected to follow Local Rule 56.1. *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (affirming application of Local Rule 56.1 to a *pro se* litigant to deem the defendant's facts as admitted); *Greer*, 267 F.3d at 727 (same); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Rivers could of course be forgiven for minor problems in any Local Rule 56.1 statement of facts. But to skip the filing *entirely* is another matter. The government complied with the *pro se* litigant notice requirement of Local Rule 56.2, and served Rivers with a notice describing how to file her Local Rule 56.1 response. R. 73-10, Notice to Pro Se Litigant. Given the complete absence of any Local Rule 56.1 filings by Rivers, the Court adopts the well-pleaded allegations in the complaint as well as the facts supported by citations in the government's Rule 56.1 statement. R. 73-2, PSOF.

## B. Factual Background

Since 2011, Patricia Rivers has prepared federal income tax returns for people through her company, Alpha II Omega Tax, alongside her daughter-in-law Ki'esha Gary. R. 1, Compl. ¶¶ 5, 7; PSOF ¶ 1. Rivers prepares tax returns as a paid income tax preparer, typically charging her customers a fee of between $400 and $800. Compl. ¶¶ 7, 14; PSOF ¶¶ 1, 4. Tax preparers are assigned Preparer Tax Identification Numbers by the IRS. PSOF ¶ 2. Based on returns containing Rivers' Tax Identification Number, she prepared at least 522 returns in 2016; 845 in 2017; 749 in 2018; and 614 in 2019. Compl. ¶ 16; PSOF ¶ 2. In total, that is 2,730 federal income tax returns for the calendar years 2016 to 2019. PSOF ¶ 2. Gary's Identification Number appeared on a small number of tax returns between 2016 and 2019 (around 41), but some customers whose returns have Gary's Identification Number have told the IRS that in fact Rivers prepared their tax returns. *Id.* ¶ 17. In 2021, Rivers' Tax Identification number was attached to 206 tax returns, and Alpha II Omega Tax as a company was listed as the return-preparation firm for 472 returns. PSOF ¶ 3; R. 85-1, Am. Mueller Decl. ¶¶ 5–6.[3]

Prior to its civil investigation, the IRS audited 12 income tax returns prepared by Rivers between the years of 2012 to 2014; the audit identified Rivers' deductions scheme and sole-proprietorship scheme. Compl. ¶¶ 18–21; PSOF ¶¶ 5–7. Rivers had

---

[3]The Court construes the government's request for leave to submit a revised declaration, R. 85, as itself the motion to submit a revised declaration. The motion is granted, and R. 85-1 is the operative version of the declaration, using the revenue agent's pseudonym as permitted by the Internal Revenue Service Restructuring Act of 1998, Pub. L. No. 105-206, § 3706, 112 Stat. 685, 778 (1998), and by the Internal Revenue Manual §§ 10.5.7.4 and 10.5.7.4.1.

been including false charitable donations and inflated unreimbursed employee expenses. Compl. ¶¶ 11, 19; PSOF ¶¶ 8–9, 15–17, 21, 23. The customers reported to the IRS that they neither told Rivers the false information included on the tax returns, nor did they actually donate the amount listed or actually incur the expenses listed on their returns. Compl. ¶¶ 11–12, 42–43, 49–50, 54–55, 59–60, 64–65, 71–72, 78–79, 83–84, 90–91, 95–96, 100–01, 105–06, 112–13, 117–18; PSOF ¶¶ 8–10, 15–17, 21; *see also* R. 73-6, EM and LPM Decl. On the sole-proprietorship scheme, Rivers included fabricated business losses and at times entirely fictional businesses on customers' tax returns in order to reduce the customers' taxable income. *Id.*; *see also* R. 73-3, MH Decl., R. 73-4, KNB Decl., R. 73-5, NW Decl., R. 73-7, PJ Decl., R. 73-8, JO Decl. The 12 tax returns reviewed by the IRS caused actual tax losses of $117,932. Compl. ¶ 21; PSOF ¶ 7.

From there, the IRS ran what are called Automated Underreporter Reports for tax returns prepared by Rivers' company from 2016 to 2018. Compl. ¶ 22; PSOF ¶ 8. The Automated Underreporter Reports used in this case compared the federal income tax withholdings reported on the customers' tax returns and the actual withholding reported to the IRS by third-parties, such as employers and educational institutions. *Id.* This automated process also uses computer matching to identify differences between qualified education expenses reported to the IRS and those that were reported on the customers' returns. *Id.* The reports showed more than 500 returns with overstated tax withholdings and overstated education credits. Compl. ¶ 23. The calculated total tax loss for those returns was $391,995. *Id.*; PSOF ¶ 9.

The IRS also reviewed 50 returns from 2016 to investigate Rivers' due diligence in determining customers' eligibility for the Child Tax Credit, American Opportunity Credit, and Earned Income credit. Compl. ¶¶ 24, 30; PSOF ¶¶ 10–11. Of those 50 examined returns, 38 of them showed due-diligence violations. *Id*. The IRS fined Rivers $17,340 in March of 2018 for these violations. Compl. ¶ 24; PSOF ¶ 12.

At least 13 customers have made complaints to the IRS about Rivers' preparation of tax returns. Compl. ¶ 25; PSOF ¶ 13. The customers alleged a wide range of misconduct, including that Rivers fabricated businesses, included false business losses, lied about deductions and non-existent rental properties, and even that Rivers amended a customer's return without their consent to *increase* the customer's tax liability in retaliation. *Id.*; PSOF ¶ 14.

A Revenue Agent for the IRS interviewed 38 of Rivers' customers about their 2018 federal income tax returns. Compl. ¶ 26; PSOF ¶ 15. The government details 15 customers for whom Rivers prepared and submitted fraudulent tax returns. Compl. ¶¶ 40–124; PSOF ¶ 19. All 15 customers reported that their tax returns prepared by Alpha II Omega Tax included incorrect, false, and unsubstantiated information not based on any information that the customers provided to the company. Compl. ¶¶ 40–124; PSOF ¶¶ 20–21. The customers explained that the information on their tax returns about self-employment income and expenses was false and that the Defendants made up that information. Compl. ¶¶ 42–43, 49–50, 54–55, 59–60, 64–65, 71–72, 78–79, 83–84, 90–91, 95–96, 100–01, 105–06, 112–13, 117–18; PSOF ¶ 21–32.

This part of the civil investigation revealed that Rivers repeatedly violated federal tax laws through a variety of unlawful activities. Compl. ¶ 27; PSOF ¶ 16. Items such as self-employment income, charitable donations, and rental income are generally self-reported and not independently verified by third-party reports. Compl. ¶ 29. This was crucial to Rivers' schemes, because only an investigation by the IRS can verify the numbers reported on returns for those types of income and losses. *Id.* At least 11 of the 15 customers interviewed by the Revenue Agent were not actually even self-employed. Compl. ¶¶ 43, 50, 55, 65, 79, 84, 91, 101, 106.

As part of the schemes, Rivers fabricated charitable donations and unreimbursed employee expenses on Schedules A, Compl. ¶¶ 11, 19, 27, 29, 34–35, 107–08; PSOF ¶ 16, and prepared false Schedules C with inflated or entirely fraudulent losses designed to reduce taxable income, and, in certain instances, returns that listed entirely fictitious business entities. Compl. ¶¶ 12, 20, 25, 27, 32, 42–43, 46, 48 – 50, 54–56, 63–65, 71–72, 78–79, 83–84, 90–92, 95–97, 100–02, 105–06, 112–14, 117–19; PSOF ¶¶ 23–24, 26–27, 30–31; *see also* R. 73-3, MH Decl., KNB Decl., PJ Decl. And further, she often included falsified Schedule E rental deductions, including deductions based on falsely classifying the customer's primary residence as rental property. Compl. ¶¶ 13, 27, 44–45, 46, 66–68, 73–74, 85–86; PSOF ¶ 16, 23, 25, 33. As part of this scheme, on at least one occasion, Rivers listed her own home address as the rental property that supposedly generated losses on a customer's tax return. Compl. ¶ 28; PSOF ¶ 16.

Rivers' misconduct resulted in understated tax liabilities on her customers' returns, meaning her customers received higher income tax refunds than they were actually entitled to. Compl. ¶¶ 27, 134; PSOF ¶ 17. The fraudulently inflated tax returns caused an actual tax loss to the United States of $278,461—nearly $7,140 of underreporting per return. Compl. ¶¶ 27, 37; PSOF ¶ 17. The customers interviewed by the Revenue Agent represent only a small number of the thousands of income tax returns prepared by Rivers, so the total loss to the United States exceeds $278,461. Compl. ¶ 126.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d

451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

As discussed earlier in the Opinion, in light of Rivers' default and the complete failure to comply with Local Rule 56.1, the undisputed evidence makes it clear that liability is not in question. Practically speaking, the Court's primary role here is to determine the appropriate scope of the remedy. The government seeks a permanent injunction barring Rivers from ever acting as a tax preparer again. Compl.; R. 73, Pl.'s Mot. Summ. J. Although liability is clear, for completeness the Court will review the facts that establish each allegation against Rivers in this case.

To start, Section 7407(a) of the Internal Revenue Code gives the government the ability to seek an injunction against tax return preparers who have engaged in specific types of conduct listed in subsection (b) of § 7407. 26 U.S.C. § 7407. Because the government seeks a statutorily authorized injunction here, and because the statute does not itself require proof of irreparable injury or inadequacy of other remedies, those traditional equitable elements need not be shown. *See CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979). Once the government demonstrates a violation, the government then need only show that there is some reasonable likelihood of future violations. *United States v. Kaun*, 827 F.2d 1144, 1148 (7th Cir. 1987). Here the government asks for a permanent injunction under § 7407(b)(1)(A) and (D), meaning that

Rivers "engaged in … conduct subject to penalty under section 6694 or 6695 [26 USCS § 6694 or 6695], or subject to any criminal penalty provided by this title" and that she "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws …." 26 U.S.C. § 7407(b)(1)(A),(D).

If the Court finds that the tax preparer has done so and that "injunctive relief is appropriate to prevent the recurrence of such conduct," it has the authority to enjoin that person from continuing specific conduct. 26 U.S.C. § 7407(b)(2). And if, as the government argues here, the preparer's conduct is continual or repeated and a narrower injunction would not be enough to prevent the preparer's interference with the proper administration of federal tax laws, the court may enjoin the person from further acting as a return preparer completely. *Id.*

## A. Count One

The government is entitled to summary judgment in its favor on Count One because the facts establish that Rivers violated Internal Revenue Codes §§ 6694 and 6695, and that Rivers engaged in other deceptive and fraudulent conduct that interfered with the administration of the Internal Revenue Code.

Rivers violated both subsections § 6694(a) and § 6694(b). Section 6694 prohibits the knowing understatement of tax liability by a tax return preparer due to either: (1) the taking of an "unreasonable position" (that is, those not supported by "substantial authority" under subsection 6694(a)(2)); or (2) understatement due to willful or reckless conduct. 26 U.S.C. §§ 6694(a)–(b). Rivers knowingly understated her

11

customers' tax liabilities through the deductions scheme, the sole-proprietorship scheme, and the rental-property loss scheme—each of which involved wholly unreasonable positions in violation of § 6694(a). Compl. ¶¶ 7, 37, 134; PSOF ¶¶ 15–17. For each of these schemes, Rivers included false information. Compl. ¶¶ 40–124. For example, the deductions scheme involved fake charitable donations and non-existent expenses, Compl. ¶¶ 42–43, 49–50, 54–55, 59–60, 64–65, 71–72, 78–79, 83–84, 90–91, 95–96, 100–01, 105–06, 112–13, 117–18; PSOF ¶¶ 8–10, 15–17, 21; *see also* EM and LPM Decl. The sole-proprietorship scheme listed businesses that did not exist, and the rental-property scheme involved falsified rental deductions based on improperly classifying primary residences as rental properties. *Id.*; *see also* MH Decl., KNB Decl., NW Decl., PJ Decl., JO Decl. All of these schemes involved claims that had no basis in fact and so the misrepresentations were clearly improper and unreasonable. The fake information that Rivers included on her customers' returns also demonstrates that she willfully tried to understate their tax liabilities, thus violating § 6694(b).

    Rivers' violations of § 6695 are even more straight forward. Multiple customers confirmed to the IRS that despite Gary's name appearing on their tax return, it was actually Rivers who prepared the return. Compl. ¶¶ 17, 57, 93, 110, 141. Rivers violated § 6695(b) and § 6695(c) when she signed returns that had actually been prepared by Gary, Compl. ¶ 139, when she prepared customers' tax returns but then failed to sign them herself and instead affixed Gary's name, Compl. ¶¶ 17, 57, 93,

110, 141, and when she failed to include her Tax Preparer Identification Number on multiple returns. Compl. ¶¶ 138–41; Pl.'s Br. at 10–11.

### B. Count Two

Count Two in this case seeks an injunction under 26 U.S.C. § 7402(a). This provides an additional grant of authority for this Court to issue an injunction where necessary or appropriate for the enforcement of the internal revenue laws. 26 U.S.C. § 7402(a). As discussed earlier, Rivers abused and manipulated the tax reporting system so that the false information she included on customers' tax returns could not be compared to independent third-party reports. Pl.'s Br. at 148. The carefully crafted format of Rivers' scheme required the IRS to expend significant resources to uncover this type of misconduct and enforce its laws. Because of the breadth, structure, and gravity of Rivers' unlawful tax-preparation schemes, as discussed above, this Court also grants summary judgment on Count Two and issues the permanent injunction under 26 U.S.C. § 7402(a).

### C. Injunctive Relief

In addition to satisfying § 7407(b), the evidence shows that there is a reasonable likelihood that Rivers will commit future violations, so a permanent injunction is warranted here. To evaluate the likelihood of future violations, the Court considers the totality of the circumstances. *United States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The record shows that Rivers has been including fraudulent information on customers' tax returns dating all the way back to within a year of founding her

business. *See, e.g.*, Compl. ¶¶ 18–21; PSOF ¶¶ 5–7. And the impact of Rivers' misconduct is severe. Her repeated misconduct has caused, at a minimum, hundreds of thousands of dollars in actual tax losses. Compl. ¶¶ 21, 23, 37; PSOF ¶¶ 7, 9, 17–18. The breadth and severity of Rivers' fraudulent tax preparation strategies makes it clear that at minimum (to say the least) there is a reasonable likelihood of a future violation.

The Court now turns to the key issue in this case: the scope of the injunction. The government argues that Rivers should be permanently enjoined from acting as a tax return preparer because she has repeatedly violated I.R.C. §§ 6694 and 6695, and engaged in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the tax laws; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty under I.R.C. §§ 6694 and 6695, or other fraudulent or deceptive conduct, would be insufficient to prevent their interference with the proper administration of the tax laws. Pl.'s Mot. Summ. J.

There is no dispute that Rivers has repeatedly and continuously prepared tax returns in ways that violate I.R.C. §§ 6694 and 6695. The IRS already attempted to deter Rivers' interference with the proper administration of the tax laws when it assessed $17,340 in penalties against her for due-diligence violations—to no avail. Compl. ¶¶ 24, 127; PSOF ¶¶ 12, 35. Despite the penalty and despite being aware that the IRS has audited many of Rivers' customers, Rivers continues to prepare tax returns on behalf of hundreds of customers. Compl. ¶¶ 30, 148; PSOF ¶ 36. And the IRS investigation has shown that Rivers' intentional disregard for tax laws continues. As

14

recently as 2021, Rivers again falsified, unbeknownst to a customer, a business with fake losses. Am. Mueller Decl. ¶¶ 5–8. This matches Rivers' pattern of improper tax practices and demonstrates the continuation of her sole-proprietorship scheme. The combination of evidence in this case makes it clear that a narrow injunction only prohibiting specific conduct would not stop Rivers from continuing to interfere with the proper administration of the tax laws. Accordingly, this Court grants the government's request to permanently enjoin Rivers from acting as a tax preparer.

### III. Conclusion

The government's motion for summary, R. 73, is granted. The Court enters a permanent injunction: Rivers and Alpha Omega II are enjoined from acting as a federal income tax preparer, as further detailed in the separately entered permanent injunction. The status hearing of April 15, 2022, is vacated. Final judgment shall be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022